NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2847
_____

MALKHAZ OGRAPISHVILI,
NINO SHUBITIDZE
*Petitioner*

v.

ATTORNEY GENERAL OF THE UNITED STATES
*Respondent.*

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA Nos. A98-906-541/542

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 2, 2010

Before: McKEE, *Chief Judge*, HARDIMAN, *Circuit Judge,*
and POLLAK, *District Judge.*[*]

_____

OPINION
(Filed: June 10, 2010)

McKEE, *Chief Judge*.

    Petitioner Malkhaz Ograpishvili petitions for review of a final removal order of the

_____

    [*] The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

1

Board of Immigration Appeals ("BIA") denying him and his wife asylum, withholding of removal, and relief under the Convention Against Torture. For the reasons that follow, we will deny his petition for review.

## I.   FACTS AND PROCEDURAL POSTURE

We write primarily for the parties and therefore need not set forth the factual or procedural history. At his hearing, the Immigration Judge ("IJ") asked Ograpishvili about perceived inconsistencies between his asylum application and his asylum interview. The IJ found that Ograpishvili's explanation was not credible, and this credibility determination was a factor in the IJ's decision to deny Ograpishvili relief. The IJ also concluded that Ograpishvili failed to establish that any adverse treatment he was subjected to in Georgia was "on account of race, religion, nationality, membership in a particular social group, or political opinion," as required under 8 U.S.C. § 1101(a)(42) to qualify for relief from removal.[1] Ograpishvili claimed that he was persecuted for his whistle-blower activity related to corruption in Georgian customs.

The BIA affirmed the IJ's ruling, concluding that Ograpishvili had failed to show that the threats and attack he suffered were on account of a protected ground. According to the BIA, Ograpishvili's testimony established that the threats and violence he faced were an effort to force him to leave his customs job. The BIA concluded that the

---

[1] To qualify for asylum, a petitioner must show that any mistreatment rose to the level of "persecution or a well-founded fear of persecution" and that such mistreatment was "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

2

mistreatment would have stopped if Ograpishvili had resigned.

The BIA also upheld the IJ's adverse credibility finding. The BIA cited particular inconsistencies from the record in support of its adverse credibility determination. First, Ograpishvili stated in his asylum application that after the January 2004 incident, he received "proper medical aid" from the nearest medical center but that the doctor denied his request for a medical report documenting the nature and cause of his injuries. However, he also submitted a medical report from that incident as documentary evidence with the application. When asked about this discrepancy in his asylum interview, Ograpishvili stated that he did not receive the medical care he needed at the first clinic and that he had to seek treatment at a second clinic. The medical report was from that second clinic. He explained that he omitted one of the visits in his asylum application because he wanted to focus only on the difficulties he and his wife experienced in Georgia. Ograpishvili never explained why he concluded that the first doctor's inadequate medical attention and refusal to provide a report did not support his and his wife's asylum claims.

Second, the BIA noted that Ograpishvili again changed his story when the IJ confronted him with these discrepancies. Ograpishvili then claimed that the omission resulted from inaccurate translation of the events by his wife. The BIA found this explanation unconvincing because Ograpishvili's wife had personal knowledge of the January 2004 events.

This petition for review of the BIA's order followed.

## II. JURISDICTION AND STANDARD OF REVIEW

Our jurisdiction over a petition for review of a final removal order by the BIA

arises under INA § 242(a), 8 U.S.C. § 1252(a). Absent certain specific circumstances,

which are not present here, we review the decision of the BIA and not that of the IJ.

*Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). We must accord the BIA's

factual findings in a final removal order denying asylum significant deference. Where the

BIA's adverse credibility decision is supported by "substantial evidence," we will not

intervene unless the record as a whole would "compel[]" any reasonable fact-finder to

conclude otherwise. *Xie v. Ashcroft*, 359 F.3d 239, 243 (3d Cir. 2004). Although

"adverse credibility determinations cannot be based on speculation or conjecture, such a

finding will be afforded substantial deference" when the BIA provides "specific[,] cogent

reasons" grounded in the record to support those determinations. *Abdulrahman v.*

*Ashcroft,* 330 F.3d 587, 597 (3d Cir. 2003) (citations omitted). Adverse credibility

determinations may be based on "inconsistent statements, contradictory evidence, and

inherently improbable testimony." *Cao v. Att'y Gen. of U.S.*, 407 F.3d 146, 152 (3d Cir.

2005) (quotation marks omitted).

## III. DISCUSSION

Ograpishvili argues that the BIA's adverse credibility finding is erroneous because

it relied on speculation rather than evidence. He contends that he fully explained what he

4

deems to be minor inconsistencies in his case. He also claims that his allegations of persecution in response to his whistle-blower activity satisfy the requirements of the statute. According to Ograpishvili, the BIA impermissibly ignored evidence in the record in concluding that his mistreatment at the hands of the customs office where he worked would have stopped if he had resigned.

Asylum is a form of discretionary relief, and a petitioner bears the burden of proving he cannot return to his home country because of, as relevant here, "persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Past persecution requires a showing that the government or forces beyond its control threatened the applicant's life or freedom because of a protected ground. *Abdulrahman*, 330 F.3d at 592. To prove a well-founded fear of future persecution, the applicant must present credible testimony of his genuine subjective fear of persecution, and evidence that a reasonable person in his position would fear returning to his country of origin. *Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) (citations omitted). Credible testimony can satisfy the applicant's burden; but documentary evidence may also be required. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). To be eligible for withholding of removal,[2] the standard is higher than the well-founded fear required for asylum. The alien must

---

[2] Because Ograpishvili did not challenge the IJ's denial of CAT relief in his BIA appeal or in his brief to this court, the issue is waived and need not be discussed further. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316 n.2 (3d Cir. 2001) (*en banc*).

demonstrate that it is "more likely than not" that he will be persecuted in his home country on account of a protected ground. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429, 448-50 (1987); INA § 241(b)(3); 8 U.S.C. § 1231(b)(3).

Although we are reviewing the decision of the BIA, we are nevertheless troubled by the IJ's adverse credibility determination that, at least in part, contributed to the BIA's ruling. We cannot speculate on the precise weight that the IJ placed on Ograpishvili's testimony that the first doctor he visited refused to give him a report in making an adverse credibility determination. The IJ reasoned that it was "unlikely that a physician would refuse to provide a written record of the Respondent's visit." *In the Removal Case of Ograpishvili*, Nos. 98-906-541/542, at 4 (I. & N. Dec. June 27, 2007). That conclusion appears to be based on nothing more than the IJ's own experience. However, we do not think it the least bit suspicious or surprising that a doctor in a country governed by an abusive or corrupt regime would be extremely reluctant to document anything that could impact adversely on that regime or its agents. Rather, absent evidence to the contrary, it seems quite likely that such a physician would refuse to document any treatment that resulted from abuse at the hands of government agents. The government argues that the IJ reasoned that "a treating physician likely would not be at risk by merely documenting the treatment provided without documenting the cause." Respondent's Br. at 15. However, that is pure speculation and it is equally as likely that any professional whose livelihood depends on a government license would not risk offending the very officials

6

he/she must depend on to practice medicine.

We are therefore concerned that the IJ was so willing to discredit that part of Ograpishvili's testimony. Since that testimony may have influenced the IJ's skepticism of Ograpishvili's attempt to explain inconsistencies in his asylum application and interview, it is difficult to tell what effect it had on the IJ's adverse credibility determination.

Nevertheless, we must affirm the BIA's denial of relief because, even if we accept all of Ograpishvili's testimony as true, we agree that the record does not support a finding that the mistreatment he complains of was "on account of" a ground that would qualify for relief under the asylum statute. As the BIA found, Ograpishvili's own testimony demonstrated that the threats focused on getting him to resign from his job. Even as to the January 2004 incident, he stated "they told me several times, why don't you resign and we will just . . . leave you alone." Thus, it appears that the BIA was correct in concluding, based on Ograpishvili's own testimony, that any mistreatment would end with his resignation. Moreover, Ograpishvili argues that the threats and attack were on account of his whistle-blower activity, but that would not entitle him to relief under the asylum statute. Congress simply did not include "whistle-blowers" within the scope of 8 U.S.C. § 1101(a)(42). Accordingly, unless the status of "whistle-blower" can somehow be equated with "race, religion, nationality, membership in a particular social group, or political opinion," it does not advance Ograpishvili's claim for relief. Finally, because he no longer works as a customs officer, his own testimony establishes that his assailants

will "leave him alone" if forced to return.[3]

## CONCLUSION

For the foregoing reasons, we will deny the petition for review.

---

[3] Ograpishvili could conceivably have established his eligibility for relief had he established that the "persecution" he complains of was because of a political opinion imputed to him because of the activities of his cousin. *See Amanfi v. Ashcroft*, 328 F.3d 719, 729 & n.4 (3d Cir. 2003). However, this record does not contain any testimony that would support that conclusion, and Ograpishvili is not relying on that basis for relief.